UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
CASE NO.

ISAIAH WALLACE,

    Plaintiff,

v.

CITY OF MIAMI GARDENS, a Florida Municipal Corporation,
JOSEPH ZELLNER, individually, and SEAN HORNE, individually,

    Defendants.
_____/

## COMPLAINT

1) This a civil action seeking money damages in excess of $15,000, exclusive of costs, interest, and attorney's fees, arising out of violations of federal law detailed below against the CITY OF MIAMI GARDENS, and JOSEPH ZELLNER, individually, and SEAN HORNE, individually.

2) This action is brought pursuant to 42 U.S.C. § 1983, and the First, Fourth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1332, 1343 and 1367, 42 U.S.C. § 1988 and the constitutional provision mentioned above.

3) The acts and practices constituting the violations alleged below have occurred within the jurisdiction of the United States District Court, in and for the Southern District of Florida.

**PARTIES**

4) PLAINTIFF, ISAIAH WALLACE, was, at all times material hereto, an adult resident of Miami-Dade County, Florida, and is a citizen of the United States.

5) At all times material, DEFENDANT CITY OF MIAMI GARDENS [hereinafter CITY] was a municipal corporation of the State of Florida and has its place of business in the City of MIAMI GARDENS in Miami-Dade County in the Southern District of Florida, is *sui juris*, and acted through its agents, employees, and servants including police officers. The Miami Gardens Police Department [hereinafter DEPARTMENT] is an agency of the CITY.

6) DEFENDANT, SEAN HORNE [hereinafter HORNE], was, at all times material hereto, an agent, employee and sworn member of the City of Miami Gardens Police Department and the City of Miami Gardens. At all times relevant to this case, HORNE acted in conformance with the customs, practices, and/or policies of the Miami Gardens Police Department and the City of Miami Gardens and acted under color of state law.

7) DEFENDANT, JOSEPH ZELLNER [hereinafter ZELLNER], was, at all times material hereto, an agent, employee and sworn member of the City of Miami Gardens Police Department and the City of Miami Gardens. At all times relevant to this case, ZELLNER acted in conformance with the customs, practices, and/or policies of the Miami Gardens Police Department and the City of Miami Gardens and acted under color of state law.

## FACTUAL ALLEGATIONS

8) On or about September 13, 2013, PLAINTIFF was arrested by the Miami Gardens Police Department and taken to the police station.

9) After his arrival at the station, PLAINTIFF was placed into an interview room designated as Interview Room 2.

10) Interview Room 2 contained audio and video recording equipment [hereinafter equipment] which was functional and the equipment was controlled from outside the room. At all times DEFENDANTS HORNE and ZELLNER possessed the ability to control all functions of the recording equipment.

11) In addition to recording, the equipment permitted all communications and activities in the room to be actively monitored and surveilled.

12) At least from the time PLAINTIFF was placed into Interview Room 2, the audio and video recording equipment was started and all activity in the room was video and audio recorded and actively surveilled and monitored and DEFENDANTS ZELLNER and HORNE acted in a manner and way to ensure that equipment was fully functioning, working, and audio and video recording everything occurring in the room.

13) At a time at or about 21:10 hours after PLAINTIFF was placed into the room and the audio and video recording and the active surveilling and monitoring commenced, PLAINTIFF's attorney, Vincent Duffy, arrived at the police station and he was escorted by DEFENDANT ZELLNER into the interview room.

14) At all times, DEFENDANTS ZELLNER and HORNE knew Duffy was a duly licensed attorney, a member of The Florida Bar, and he represented Plaintiff.

15) After DEFENDANT ZELLNER exited the room and no police officer was in the room, PLAINTIFF communicated and interacted with Duffy. At that time only Duffy and PLAINTIFF were in the room and all communications and interactions which were subject to the attorney-client privilege.

16) PLAINTIFF's communications and interactions with Duffy were video and audio recorded and actively surveilled and monitored, including by DEFENDANTS ZELLNER and HORNE, the entire time PLAINTIFF and Duffy were in the interview room.

17) Prior to entering the room and continuing until Duffy left the room, PLAINTIFF was not informed that his interactions actions and communications with his lawyer would be video and audio recorded and actively surveilled and monitored while in the interview room.

18) Prior to entering the room and continuing until he left the room, Duffy was not informed that his interactions and communications with PLAINTIFF, his client, would be video and audio recorded and actively surveilled and monitored while in the interview room.

19) Specifically, DEFENDANTS ZELLNER and HORNE did not notify PLAINTIFF and Duffy that all their communications and interactions in the room would be audio and video recorded and actively surveilled and monitored. Nor were there any signs posted apprising PLAINTIFF and Duffy of the recording, active surveilling and active monitoring. All equipment in the room was concealed from view.

20) PLAINTIFF believed and expected that his communications and interactions with his lawyer in the interview room after all police officers including ZELLNER left the room would be private, covered by the attorney-client relationship, and privileged.

21) At all times PLAINTIFF and Duffy each had an expectation of privacy while in the interview room that their communications and interactions would not be recorded in any manner and would not be actively surveilled and monitored because of the attorney-client privilege and that their communications and interactions would remain confidential.

22) Despite knowing that the communications and interaction between PLAINTIFF and his lawyer were confidential pursuant to the attorney-client privilege, DEFENDANTS HORNE and ZELLNER allowed the equipment to record the confidential communications and interaction between Duffy and HORNE. In addition, HORNE and ZELLNER actively monitored and surveilled the communications and interactions.

23) The recording, active monitoring and active surveilling of the interactions and communications between PLAINTIFF and his attorney continued until approximately 21:18 hours.

24) At approximately 21:18 hours, ZELLNER and HORNE entered the room and introduced themselves. After PLAINTIFF was read his Miranda rights, he invoked his right to remain silent and the meeting by ZELLNER and HORNE concluded.

25) After HORNE and ZELLNER exited the interview room, they turned off the recording equipment and obtained a copy of the recording on a computer optical disk. The disk was secured by HORNE and ZELLNER and placed into evidence at the Miami Gardens Police Department.

26) At a time after September 13, but before October 9, 2013, HORNE delivered the optical disk to the State Attorney's Office and the State Attorney's Office was informed of the confidential nature of the recording.

27) At a time no earlier than October 9, 2013, the State Attorney's Office informed PLAINTIFF's counsel Robert Barrar of the recording and delivered the optical disk to him. According to notations on the sleeve containing the optical disk, no member of the State Attorney's Office viewed the recording.

28) Based on information and belief, other copies of the recording exists including a copy maintained on the hard drive or in the internal storage of the recording equipment.

29) Based on information and belief, ZELLNER or HORNE reviewed the recording and permitted others to review the recording.

30) Based on information and belief, DEFENDANTS HORNE and ZELLNER actively monitored the communications and interactions between PLAINTIFF and his attorney Duffy while the communications and interactions were in progress through the use of monitoring equipment.

31) The optical disk provided to Robert Barrar was delivered to undersigned counsel by Barrar and the seal of the sleeve remains intact for evidentiary purposes. Accordingly, the exact contents of the recording is unknown to PLAINTIFF.

32) At all times material, CITY through its police department, Chief of Police and supervisors, City Manager and supervisors, by a policy statement, ordinance, regulation or decision officially adopted or promulgated [POLICY] or by practice or custom [CUSTOM] directly and proximately caused PLAINTIFF to be deprived of his right be free from unreasonable searches and seizures under the United States Constitution, including the Fourth and Fourteenth Amendments.

33) The CUSTOM and POLICY includes the following:

    a) Whenever an arrestee is placed into an interview room, the audio and video recording will be turned on and remain in operation throughout the entire time the arrestee

remained in the room regardless who entered or exited the room until the time the arrestee exits the room.

      b)      All communications and actions which occur in the interview room shall be audio and video recorded.

      c)      The audio and video recording equipment must be turned on prior to the placement of the arrestee into the interview room.

      d)      At no time when the arrestee is in the interview room should the audio and video equipment be rendered inoperable or turned off.

34)      A failure to follow the above CUSTOM and POLICY could result in disciplinary action taken against any officer involved in the placement, monitoring, questioning and interrogating the arrested.

35)      At no time was any exception established to the above CUSTOM and POLICY regarding the recording of any privileged communication, communication prohibited by law from being recorded, and communication prohibited by the United Sates Constitution from being recorded.

## COUNT 1

### 42 U.S.C. §1983: Violation of Fourth Amendment Rights
### Unreasonable Search and Seizure: Wiretap

36) Paragraphs 1 through 35, above, are realleged and incorporated by reference herein.

37) DEFENDANTS ZELLNER and HORNE intentionally intercepted, endeavored to intercept, and/or procured others to intercept PLAINTIFF's oral and other communications.

38) Said actions violated PLAINTIFF's Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures.

39) The oral and other communications intercepted by DEFENDANTS ZELLNER and HORNE were private, covered by the attorney-client relationship, and privileged.

40) PLAINTIFF enjoyed a reasonable expectation of privacy in said oral and other communications.

41) The actions and inactions of DEFENDANTS ZELLNER and HORNE were taken with DEFENDANTS ZELLNER's and HORNE's willful, wanton, callous, and knowing disregard of PLAINTIFF's right to be free from unreasonable searches and seizures.

42) As a direct and proximate result of DEFENDANTS ZELLNER's and HORNE's unreasonable search and seizure, PLAINTIFF suffered damages.

WHEREFORE, PLAINTIFF demands judgment against DEFENDANTS JOSEPH ZELLNER, individually, and SEAN HORNE, individually, for:

    (a)    Actual and compensatory damages;

    (b)    Punitive damages;

    (c)    An award of attorney's fees and costs;

    (d)    Trial by jury; and

    (e)    Any other relief this Court deems just and proper.

## COUNT 2

### 42 U.S.C. §1983: Violation of Fourth Amendment Rights
### Unreasonable Search and Seizure: Wiretap- Municipal Custom and Policy

43) Paragraphs 1 through 35 and 37 through 42, above, are realleged and incorporated by reference herein.

44) As a direct result of the POLICY and CUSTOM of the CITY as set forth above 35, PLAINTIFF suffered damages.

WHEREFORE, PLAINTIFF demands judgment against the CITY, for:

(a) An order enjoining the CITY from audio and video recording attorney-client communications in the City of Miami Gardens Police facilities;

(b) An order enjoining the CITY from monitoring attorney-client communications in the City of Miami Gardens Police facilities;

(c) An order compelling the CITY to destroy all copies of the recordings and all notes, memoranda, and other writings documenting the contents of the confidential communication between Duffy and PLAINTIFF;

(d) Actual and compensatory damages;

(e) Trial by jury;

(f) An award of attorney's fees and costs; and

(g) Any other relief this Court deems just and proper.

        **GARY KOLLIN, P.A.**
        Attorney for PLAINTIFF
        1856 N. Nob Hill Road, #140
        Fort Lauderdale, Florida 33322
        Tel: (954) 723-9999
        Fax: (954) 791-6565
        garykollin@garykollinlaw.com
        pleadings@garykollinlaw.com

        s/ Gary Kollin
        Fla. Bar.# 282431